DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor/Defendant*
One N. Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S, Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

                                                       Chapter 11

FINGER LAKES CAPITAL PARTNERS, LLC,   Case No. 16-22112(RDD)

                             Debtor.
----------------------------------------------------------X
JEFFREY KESWIN,

                                       Adv. Pro. No. 16-08212

               Plaintiff,          (Removed Proceeding)

   -against-

FINGER LAKES CAPITAL PARTNERS, LLC,
V. ZUBIN MEHTA AND GREGORY SHALOV,

               Defendants.
----------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S
COMPLAINT PURSUANT TO F.R.CP. RULE 56 AND NY CPLR 3211(A)(4) AND (5)**

Defendants Finger Lakes Capital Partners LLC ("Finger Lakes"), V. Zubin Mehta ("Mehta"), and Gregory Shalov ("Shalov" and, collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion (the "Motion") for summary judgment pursuant to Bankruptcy Rule 7056 as incorporating F.R.C.P. Rule 56 dismissing the complaint in the above removed proceeding filed by Plaintiff Jeffrey Keswin ("Keswin" or "Plaintiff") as time-barred pursuant to NY CPLR 3211(a)(5) or under the "first-in-time" rule set forth in NY CPLR § 3211(a)(4) .

1

**PRELIMINARY STATEMENT**

Almost nine years after he made a $400,000 one year term loan to Finger Lakes (the "Loan") and accepted a one year promissory note (the "Note") from Finger Lakes, Plaintiff belatedly filed an action in the Supreme Court of the State of New York, County of New York (the "State Court Action") claiming the Note was in default and demanding immediate payment. Plaintiff admitted in the State Court Action that his clam was time-barred under NY CPLR §213(2), but attempted to excuse his tardiness by relying on §17-101 of New York's General Obligations Law ("Section 17-101"). Under that section and interpretive case law, the time to file an otherwise stale claim may be tolled in *narrow* circumstances; specifically, when the party obtaining the loan *unconditionally* "acknowledge[s]" or "promise[s]" in a "signed writing" to repay its indebtedness.

In 2015, each side moved for summary judgment before the Honorable Barry R. Ostrager. As Defendants advised Judge Ostrager in support of their motion, there were a multitude of reasons why Section 17-101 could not be utilized by Keswin to resuscitate his stale claim. Among those reasons was the fact that the purported "acknowledgement of" or "promise to repay" the Loan upon which Plaintiff relies to extend the limitation period is expressly conditioned upon the occurrence of an event that has not taken place and will never take place. Specifically, the Loan would be repaid, if at all, only out of Finger Lake's share (the "carried interest" of the gain (above a 6% annual rate of return to invested capital) derived from each of the investment vehicles (the "Investment Vehicles") capitalized substantially by an investment from Lyrical Opportunity Partners, L.P. ("Lyrical") and managed initially by Finger Lakes. Lyrical, a counterclaim plaintiff in the action (the "Delaware Action") commenced by Finger Lakes against Lyrical, amongst others, in the Chancery Court for the State of Delaware, is a

2

Delaware limited partnership of which the sole general partner is a limited liability company of which Keswin is the sole managing member.

At the time the summary judgment motions were heard by Judge Ostrager[1], the Court of Chancery of the State of Delaware (the "Chancery Court"), after a two-day bench trial in the Delaware Action, ruled that Finger Lakes was *not* entitled to any carried interest (the "Delaware Decision"). Nevertheless, because the Delaware Decision was on appeal, Judge Ostrager denied the summary judgment motions without prejudice.

By decision dated October 13, 2016, the Supreme Court of Delaware affirmed, among other things, the carried interest portion of the Delaware Decision thereby establishing, conclusively, that the condition upon which Plaintiff relies in order to restart the limitations period as against the Defendants has not, and will not, be fulfilled. In this circumstance, summary judgment is warranted and Keswin's claim for payment of principal and accrued interest under the Note should be summarily dismissed.

Moreover, there are other additional compelling reasons why Section 17-101 does not save Keswin's claim from dismissal:

> **The writing referencing a debt cannot be "unsigned," even if it is attached to another writing that is signed**. Here, the only reference to the Loan appears in an unsigned spreadsheet (the Spreadsheet) attached to a 2009 email (the "Email") from Finger Lakes to Ted Gage ("Gage"), the Chief Financial officer of Lyrical and a copy of the Email and attached Speadsheet sent via email by Finger Lakes to Gage's then new subordinate Desario ("Desario") in 2010. The Spreadsheet, however, was *never* signed by anyone, much less Defendants. Likewise, transcripts from Mehta's and Shalov's depositions in the Delaware Action were not signed, nor do they constitute "writings" for purposes of Section 17-101 under controlling authority ;

---

[1] Judge Ostrager denied both parties' summary judgment as per memorandum order dated December 2, 2015 (Exhibit "A" annexed hereto). The Defendants now contend, as a result of the rulings in the Delaware action, there are no remaining undisputed issues of fact and summary judgment is now appropriate.

3

**The writing must acknowledge a debt of the party to be charged, not a debt of its guarantors.** Here, not only is the Spreadsheet unsigned, it references a purported loan to Mehta and Shalov personally, *not* a loan to Finger Lakes (which is the only party to whom Keswin loaned the money and the Note's sole Payor));

**The acknowledgement or promise must not be inconsistent with the intention of the party to be charged to pay it.** Here, any acknowledgement or promise by Finger Lakes to repay the Loan, assuming for this purpose only that the spreadsheet constitutes a written acknowledgement or promise by Finger Lakes, *was* inconsistent with Finger Lakes' intention to pay the Note, because the spreadsheet identifies only the Note's guarantors, Shalov and Mehta (neither of whom signed the Email in an individual capacity and neither of whom signed the Spreadsheet) as the only payers under the Note (albeit with an obligation to repay only from the carried interest). Moreover, a written Finger Lakes' acknowledgment of a pre-existing loan or promise to pay it (assuming arguendo such acknowledgement exists) cannot restart the limitation period for either of the Loan's guarantors, as a matter of law;

**The writing referencing a debt must be sent to Plaintiff or someone acting on his behalf or intended to influence Plaintiff's actions**. Here, the writing was sent to Gage in his capacity as Lyrical's Chief Financial Officer, not to Keswin, the only Payee under the Note. Moreover, Keswin admitted in the Delaware Action that he never read the Spreadsheet, much less relied on the Spreadsheet to assess whether to seek repayment of the Loan; and

**The writing allegedly acknowledging, or promising to pay, a portion of a debt is insufficient to extend the statute of limitations governing payment of that debt.** Here, the spreadsheet identified only the original amount Keswin loaned to Finger Lakes almost nine years ago, <u>not</u> the amount of indebtedness claimed by Keswin to be outstanding, i.e., the original principal amount of the Note plus accrued interest (which today far exceeds that original principal amount).

As the New York Court of Appeals long ago made clear, the statute of limitations is intended to "outlaw[]"stale claims even if it causes "hardship." *See Schmidt v. Merchants Dispatch Transp. Co. Felli*, 270 N.Y. 287, 302 (1936). Keswin's claim is precisely such a stale claim, and his efforts to invoke Section 17-101 to resuscitate it are unavailing for panoply of reasons either viewed alone and certainly when considered collectively.

4

For these reasons, as set forth in greater detail below, Defendants respectfully request that the Court grant Defendants' motion for summary judgment dismissing Plaintiff's claims, with prejudice.

## STATEMENT OF FACTS

**A.    Keswin Lends A Different Amount
       Than Is Shown On The Face Of The Note.**

On or about August 1, 2006, Keswin loaned $400,000 to Finger Lakes and Finger Lakes delivered the Note to Keswin,  As the wire transfer confirmation (attached as Exhibit A to the June, 25 2015 Keswin Affidavit (the "Keswin Aff.")) demonstrates, the $400,000 was wired to Finger Lakes' bank account, not to the bank account of either Mehta or Shalov.  The Note states on its face a principal amount of $1 million and purports to bear interest at the rate of 20% per annum.  *See* Exhibit A to Keswin Aff.  Finger Lakes signed the Note in its capacity as the Payor, while each of Shalov and Mehta signed the Note solely in his capacity as a Guarantor.  *Id*.

**B.    Mehta Sends A Post-Maturity Date Email To Lyrical's
       *CFO* That Does Not Reference The Note.**

On October 20, 2009, more than 2 years after the Note's maturity , Finger Lakes sent the Email  to Gage, Lyrical's  chief financial officer, not to Keswin. *See* Keswin Aff. ¶ 11; Ex. C.  Moreover, while  the text of the Email discusses the Investment Vehicles, it does not discuss either the Loan or the Note. The text of the Email merely describes the status of the Investment Vehicles and  among other things not relevant here, the amount that  Lyrical had invested in each of such vehicles.  See Keswin Aff. Ex. C.

The Spreadsheet merely: (1) listed the amount invested by Lyrical in each of five Investment Vehicles; ((2) stated that that carried interest was subject to a potential reduction (in the view of Keswin, Lyrical and Finger Lakes) or complete elimination (as per ruling by the

5

Chancery Court) by virtue of a "Clawback"; (3) listed the amounts loaned by Lyrical to certain of those Investment Vehicles, as well as the amount loaned by a Lyrical affiliate to one debt investment vehicle; (4) stated that losses, if any, sustained by Lyrical (or its affiliate) on account of the loans set forth in (3) above were not part of the "Clawback"; and (5) listed separately under the heading "Other" a purported $400,000 loan from Keswin *to Shalov and Mehta personally*, *not to Finger Lakes*, while stating that that loan would be repaid by *Shalov and Mehta* from *their* carried interest.

Keswin already admitted in the Delaware Action that he never read the Spreadsheet. Mehta Aff. ¶20, 21. Consequently, Keswin never relied on the footnotes -- nor, for that matter, the Spreadsheet itself..

**C.     The Unsigned Spreadsheet Does Not
         Attempt to Reaffirm A Debt *By Finger Lakes*.**

The Spreadsheet is unsigned. *See* Keswin Aff. Ex. D. In a line item (entitled "Other") to footnote "(e)", the document does refer to a "Jeff Keswin Loan to GS/KM" in the amount of "$400,000." That description of a loan however (as well as the description of the loan in footnote (e)), does not fit a description of the Note Keswin now seeks to enforce. Instead, the text of the spreadsheet refers to a "[l]oan to GM/ZS", while footnote (e) to that text reads: "Loan to GM/ZS from Jeff Keswin is not included in FLCP Investment Portfolio and is due back to JK from GS and ZM out of their carried interest in FLCP Investment Portfolio." *See* Keswin Aff. Ex. C. That is, Finger Lakes, the Note's sole Payor, does not acknowledge anything or agree to pay anything in the Spreadsheet, much less a debt unconditionally owed by it to Keswin. Rather, the Spreadsheet refers only to a "[l]oan to GM/ZS" ….[which] is due back to JK (Keswin) from GS (Shalov) and ZM (Mehta) out of their carried interest in FLCP Investment Portfolio"; thus, no carried interest, no repayment. As explained above, Finger Lakes has not received nor will it

6

ever receive the carried interest, nor for that matter has, or will, either Mehta or Shalov. Mehta Aff. ¶ 12.

In addition to the foregoing, the Spreadsheet does not state or confirm an obligation to pay the full amount outstanding under the Note. With a strained reading, it arguably refers only to the original $400,000 Finger Lakes borrowed from Keswin, even though substantial interest on that amount had already accrued and Keswin now demands payment of that interest in his complaint.

**D.** **Keswin Fails to Sue Within The Statute Of Limitations.**

By its express terms, the Note matured on August 1, 2007, *i.e.* one year after issuance. Keswin Ex. A § 1.1. Keswin did not bring suit until June 24, 2015, well more than six years after the Note matured.

## ARGUMENT

"On a motion for summary judgment, the moving party (here, Defendants) has the burden to establish a *prima facie* showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." *Voss v. Netherlands Ins. Co.*, 22 N.Y.3d 728, 734 (1914).

Once the *prima facie* showing is made, for the reasons set forth below, the burden shifts to the nonmoving party "to establish the existence of material issues of fact which require a trial of the action." *Id*.

## POINT I

## **PLAINTIFF'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS**

The Court should dismiss Plaintiff's complaint with prejudice pursuant to N.Y. CPLR § 3211(a)(5) because it is time-barred. In his Affidavit, Keswin admits the Note on which he sues was "due and payable" not later than "July 31, 2007." Keswin Aff. ¶ 8. Assuming he has any claim under the Note, that claim accrued not later than August 1, 2007, the day after payment became due. N.Y. U.C.C. § 3-122(1(a) ("A cause of action against a maker or an acceptor accrues (a) in the case of a time instrument on the day after maturity"). Under N.Y. CPLR § 213(2), any claim based on a contractual obligation such as a promissory note must be brought within six years of the date of accrual. Consequently, Plaintiff's claim expired on August 1, 2013.

Plaintiff, however, commenced this removed action in July 2015 -- two years too late. Accordingly, his claim should be dismissed. *UMLIC VP, LLC v. Mellace*, 19 A.D. 684, 685 (2d Dep't 2005) (dismissing action brought under promissory note because "plaintiff failed to timely commence this action within the applicable six-year limitations period").

Nor can Plaintiff sue the guarantors of the Note - Shalov and Mehta. Keswin's right to sue these guarantors for payment accrued on the same date -- August 1, 2007. The six year statute limiting the time to sue on this separate contractual claim expired on August 1, 2013 as well. *See N.Y.* CPLR 213(2) (setting the six-year rule).

## POINT II

## THE COURT SHOULD REJECT PLAINTIFF'S EFFORT TO RESUSCITATE HIS TIME-BARRED CLAIM UNDER SECTION 17-101

Where, as here, a *prima facie* case is established that the time in which to sue has expired, "the burden then shifts to [Plaintiff] to 'aver evidentiary facts establishing that the case falls within an exception to the [s]tatute of [l]imitations.'" *Hebrew Institute for Deaf & Exceptional Children v. Kahana*, 57 A.D.3d 734, 734 (2d Dep't. 2008). Aware his claim is time-barred on its face, Keswin attempts to squeeze this action into a narrow exception to this rule provided in Section 17-101. That statute, in relevant part, provides that:

> An acknowledgement or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property.

N.Y. Gen. Oblig. Law § 17-101.

This statute imposes multiple requirements courts strictly interpret and enforce. Among other things, the "acknowledgment" or "promise" must: (1) be in a writing signed by the party to be charged; (2) recognize an existing debt of the "party to be charged" (not someone else); (3) contain nothing inconsistent with the intention on the part of the party to be charged to pay it; and (4) be unqualified and unconditional. *Faulkner v. Arista Records LLC*, 797 F.Supp.2d 299, 312 (S.D.N.Y. 2011); *Compania de Inversiones de Engergia S.A. v. AEI*, 80 A.D.3d 533, 533 (App. Div. 1st Dep't 2011) ("In order to constitute an acknowledgment of a debt under GOL § 17-101, a writing must recognize an existing debt and must contain nothing inconsistent with an intention on the part of the debtor to pay it"). Furthermore, "the acknowledgement must have been communicated to the plaintiff or someone acting on his behalf, or intended to influence the

9

plaintiff's conduct." *Faulkner*, 797 F. Supp.2d at 312.

Here, Keswin contends that each of the Email and Spreadsheet and the copy sent to *Gage's subordinate, Desario,*, somehow satisfies these requirements. *See* Pl. Br. at 7-8. As shown below, Plaintiff's contentions are meritless.

### A. At Most, The Email And Spreadsheet Represent An Intent To Repay The Loan Upon Occurrence Of An Event That Has Not Occurred And Now Never Can Occur.

Under New York law, an acknowledgement or promise to repay an expired debt must either be unconditional, or, if it is conditioned on the occurrence of a future event, the plaintiff must prove the event has occurred. Indeed, even an express acknowledgement of a debt and an affirmative promise to pay it is not sufficient to invoke Section 17-101 if attached to a condition that has not taken place. *In re Brill*, 318 B.R. at 54 (Bankr. S.D.N.Y. 2004) (debtor's statement, "I will no matter what happens give your money back", held not sufficient for purposes of Section 17-101 when conditioned on a transaction that did not occur).

At most, the Spreadsheet identifies a purported obligation to repay the Loan that is expressly conditioned on the occurrence of a future event; specifically, the coming into existence of the carried interest from which Shalov and Mehta would repay the Loan. As footnote (e) to the Spreadsheet recites, "GS" (Shalov) and "ZM" (Mehta), not Finger Lakes (already making it defective), would repay the Loan only out of "their carried interest from the FLCP Investment Portfolio." *See* Keswin Aff. Ex. D, footnote (e). Of course, neither Shalov nor Mehta has or had "a carried interest" in the "FLCP Investment Portfolio;" only Finger Lakes at one point had a right to such an interest. *Supra*, p. 3. In any event, by virtue of the rulings in the Delaware Action, the Clawback eliminated Finger Lakes' future carried interest altogether and, accordingly, the carried interest condition to payment of the Loan has not been, *and cannot*

*be*, fulfilled. Mehta Aff. Pp12.   This undisputed fact alone is fatal to Plaintiff's claim.

B. **The Emails, Spreadsheet, and Transcripts All Fail To Satisfy The Express Signature Requirements Of Section 17-101.**

The spreadsheet -- the only writing even referencing a "loan" -- is unsigned, a fact Keswin does not dispute.  This is particularly significant because the text of the Email itself  (the Email having been signed electronically) makes no reference to the Loan or the Note.  Under New York law, the actual writing on which a Plaintiff relies to invoke Section 17-101 must be signed (here, the Spreadsheet). It is not sufficient for another document (here, the Email) attaching the writing to be signed. *See Matter of Brecher*, 80 A.D.2d 583, 583 (2d Dep't 1981) (finding that statute of limitations is not tolled by recitation of debt in a financial statement because "the fact that the portion which refers to their debt is unsigned, mandates the conclusion that it does not meet the requirements of section 17-101 of the General Obligations Law").

In addition, to the extent Keswin argues that the deposition and trial transcripts annexed to the Keswin Aff. satisfy the "signed writing" requirement of § 17-101, such argument is similarly without merit.  New York courts have held that a transcription -- even when signed -- fails to satisfy the requirements for tolling the statute of limitations under 17-101.  *See Erdheim v. Gelfman*, 303 A.D.2d 714, 757 N.Y.S.2d 320 (2d Dep't 2003) (finding transcript of discussion in which Plaintiff allegedly acknowledged debt "fails, as a matter of law, to satisfy the requirement for tolling the statute"); *see also Miwon, U.S.A. v. Crawford*, 629 F. Supp. 153, 156-59 (S.D.N.Y. 1985) (finding that statements in signed deposition transcript and trial testimony did not toll statute of limitations under provisions of § 17-101).   And even if transcripts were deemed adequate "writings" under New York law (and they are not), the ones relied upon by Keswin here are <u>not</u> signed by  Mehta or Shalov, much less Finger Lakes, the Note's only Payor and, accordingly, they have no probative value whatsoever.

11

Because the express signature requirements of Section 17-101 are not satisfied, Keswin's claim must be dismissed as a matter of law.

**C.    The Emails And The Spreadsheet Do Not Constitute An Acknowledgment Of Debt By *The Debtor, Finger Lakes*.**

Based upon Keswin's own recitation of the facts, the "debtor party" under the Note -- and, therefore, the "party to be charged" under section 17-101 -- is *Finger Lakes*. *See* Keswin Aff. Ex. A. However, that entity is not referred to in either of the Email or Spreadsheet as owing a debt to Keswin. Of itself, this deficiency mandates rejection of the narrow exception under Section 17-101.

To establish an acknowledgment or promise sufficient to satisfy Section 17-101, Keswin must proffer a writing signed by *Finger Lakes*, recognizing an existing debt owed by *Finger Lakes*, and containing "nothing inconsistent with an intention on the part of [Finger Lakes] to pay it." *Faulkner*, 797 F.Supp.2d at 312 (emphasis added); *see also Bild v. Konig*, No. 09-cv-5576 (ARR), 2011 WL 666259, at *4 (E.D.N.Y. Feb. 14, 2011) ("[I]t is the timeliness of Plaintiff's claims against Weider, not Konig, which he attempts to revive by Section 17-101. Thus, any acknowledgment for this purpose must be signed by Weider, not Konig, and contain an unconditional promise to pay by Weider, not Konig."). Plaintiff, however, has failed to satisfy that burden.

On its face, the Email contains no acknowledgment or reaffirmation by Finger Lakes of a Finger Lakes' debt to Keswin under either the Loan or the Note. Nor, for that matter, does the Spreadsheet. Instead, the Spreadsheet refers only to a "Loan to GS/ZM." Keswin Aff. Ex. C. Similarly, footnote (e) states that the "Loan to GS/ZM from Jeff Keswin . . . is due back to JK from GS and ZM out of their carried interest from Finger Lakes Investment Portfolio." *Id*. Thus, the unambiguous language of the Spreadsheet does not contain an

12

acknowledgement or promise *by Finger Lakes* to pay the Finger Lakes' indebtedness that Keswin seeks to untimely enforce.

To avoid the statute of limitations under Section § 17-101, strict compliance is required: the plaintiff must show that the writing, by its own terms, acknowledged the specific debt plaintiff seeks to enforce as well as the specific debtor[2]. Keswin cannot do so.

The absence of any written mention of Finger Lakes is not merely a technical glitch - it affects the fundamental validity of the writing proffered to toll the statute of limitations. *Moore v. Candlewood Holdings, Inc.*, 714 F.Supp.2d 406, 411-12 (E.D.N.Y. 2010), is directly on point and dispositive of this action.

In *Moore*, the writing which plaintiff claimed to constitute the relevant acknowledgment said there were "loans from shareholders," but did not identify which shareholder was the lender. The plaintiff argued that defendant's listing was "meant to" refer to plaintiff based on what defendant must have known. However, the Court rejected that argument because any reliance on unwritten understandings "is inconsistent with the requirements of [section 17-101] that a debt must be acknowledged in a writing" sufficient to make clear who specifically owes what to whom. *Moore*, 714 F. Supp. at 411.

---

[2] In the corollary, as a matter of law, Finger Lakes -- as the debtor under the Note -- cannot acknowledge a debt on behalf of Mehta and Shalov as guarantors. *See*, *e.g.*, *Park Assocs. v. Crescent Park Assocs., Inc.*, 159 A.D.2d 460, 462, 552 N.Y.S.2d 314, 315-16 (2d Dep't 1990) (dismissing complaint against individual defendant guarantors because acknowledgment of promissory note by corporate defendant did not extend statute of limitations as to the note's guarantors absent clear indication that corporate defendant was acting as their agent); *see also Chase Manhattan Bank v. CDC Financial Corp.*, 54 Conn. App. 705, 707-08, 736 A.2d 938, 939-40 (Conn. App. 1999) (recognizing that, under New York law, "[a]cknowledgment of the debt by the borrower does not extend the statute of limitation period as to the guarantors 'absent some clear indication that [the borrower] was acting as the agent of the guarantors'").

For this reason alone, Plaintiff's motion for summary judgment must be denied and his claim against Defendants must be dismissed as a matter of law.

**D.      The Spreadsheet Does Not Acknowledge
         The Total Debt Keswin Seeks To Recover.**

Section 17-101 is inapplicable for additional reasons as well.  The Spreadsheet nowhere contains an acknowledgment of <u>any</u> obligation to repay the amount then due under the Note.  Instead, the document merely lists the amount of "$400,000" (Keswin Aff. Ex. D), even though the Note requires Finger Lakes "to pay interest in respect of the unpaid principal amount of this Note at a rate per annum equal to the lesser of 20% and the Maximum Rate." *Id*. Ex. 1, pg. 2.

This pronounced failure to include a statement of accrued interest itself renders a "writing" insufficient under section 17-101 as an acknowledgment of a debt.  Again, *Moore* is dispositive:

> The second reason that the Court finds the tax returns to be insufficient to restart the limitations period is that the total amount listed for 'loans from shareholders' on the 2004 tax return is *less* than what [defendant] would have owed to the plaintiff under the Promissory Note at that time. Calculating interest at the annual rate of 9%, as set forth in the Promissory Note, the total amount owed to the plaintiff under the Promissory Note at the beginning of 2004 was $987,141.13. However, the total amount listed under "loans from shareholders" for that time is only $972,208.

*Moore v. Candlewood Holdings, Inc.*, 714 F.Supp.2d 406, 411-12 (E.D.N.Y. 2010); *see also Metwaly v. International Business Machines Corporation*, 97 A.D. 3d 514 (1st Dep't 2012).

Notably, in *Moore*, an unstated shortfall of only $15,000 on an approximate $1,000,000 obligation was found to be fatal to the plaintiff's reliance on Section 17-101.  In the case at bar, interest owed on the Note *the* Email was sent to Gage at Lyrical exceeded $240,000, monies nowhere referenced in the Email or the spreadsheet, but claimed by Keswin in this action as part

14

of the Finger Lakes' indebtedness  Again, this infirmity further requires dismissal of Keswin's claim under CPLR § 3211(a)(4).

E.  **Finger Lakes  Sent The October 20, 2009 Email To Gage In His Capacity As Chief Financial Officer Of *Lyrical*, *Not To Keswin*.**

A debtor's acknowledgment "must have been communicated to the plaintiff or someone acting on his behalf," or have been "intended to influence the plaintiff's conduct." *Faulkner*, 797 F.Supp.2d at 312 (emphasis added). That requirement has a lengthy pedigree. *Lynford v. Williams*, 34 A.D.3d 761, 762-63, 826 N.Y.S.2d 335, 337 (2d Dep't 2006) (finding that statute of limitations was not tolled under § 17-101 where it was "undisputed that [the alleged acknowledgments] were neither communicated to the plaintiff or anyone on his behalf, nor intended to influence the plaintiff's conduct in any manner") (emphasis added); *Centaur, N.V. v. William Lowe, Inc.*, No. 82 Civ. 2429, 1983 U.S. Dist. Lexis 20238, at *10 (S.D.N.Y. Jan. 6, 1983) ("Although acknowledgement of a debt generally acts to revive the statutory period and extend an obligor's liability for another six years, to extend the obligation, that acknowledgement must be communicated to the obligee") (emphasis added and citations removed). In the case at bar, the Email and attached Spreadsheet was sent to Gage, Lyrical's chief financial officer (with no cc to Keswin) and, as the Email  states, was sent to Gage to summarize the contents of a recent meeting between Gage and Mehta and to outline steps going forward. But even assuming the Email was addressed to Keswin (which it was not), the Email  makes no reference in its text or in the Spreadsheet attached to it to *any* Finger Lakes' indebtedness to Keswin. On the contrary, the text discusses "key developments" with regard to companies in Lyrical's "investment portfolio." Keswin Aff. Ex. C. It then goes on for two pages to detail such developments. The Email, in its conclusion, states that Defendants are "going to do everything in our power to ensure we get [Lyrical] and Jeff a strong overall return on the Finger Lakes

15

Investment portfolio." *Id.* However, a "strong return" on an "investment portfolio" has nothing to do with an acknowledgment of, or promise to pay, a pre-existing *personal Keswin loan* or an intent to repay it. Moreover, as discussed above, neither the text of, or footnotes to, the spreadsheet attached to the Email, contains a Finger Lakes' acknowledgment of, or a promise by Finger Lakes to pay, a Finger Lakes' debt to Keswin. Accordingly, neither the Email nor the Spreadsheet constitutes an acknowledgment of Finger Lakes' indebtedness, much less a Finger Lakes' promise or intention to pay it. This is but another infirmity in Keswin's claim requiring dismissal.

F. **The Unsigned Spreadsheet Was Never Communicated to Keswin.**

The Spreadsheet contains a line-item referring to "Jeff Keswin Loan to GS/ZM" and the amount of "400,000.00" Keswin Aff. Ex. D. In footnote (e), the Spreadsheet reads: "Loan to GS/ZM from Jeff Keswin is not included in Finger Lakes Investment Portfolio Clawback and is due back to JK from GS and ZM out of their carried interest from Finger Lakes Investment Portfolio." *Id.* fn. (e). In the Delaware Action, however, Keswin testified he never saw a Spreadsheet ( much less the Spreadsheet) containing the footnotes, and if he had he would never had agreed to it.

> A. So what I was going to say is this e-mail, this schedule, is a copy of the previous one, except in this case, Finger Lakes – or I'll say Zubin – has inserted all of these footnotes that weren't extant in the first one.
>
> Q. Uh-huh. Right.
>
> A. <u>So I know that I never saw these footnotes or reviewed these footnotes prior to this litigation.</u>
>
> ***
>
> Q. Both you and --
>
> A. <u>I did not -- I never saw these notes, and I never agreed to these notes</u>.

16

Mehta Aff. Ex.D at 102-03 (Keswin cross-examination; emphasis supplied).

Under similar circumstances, such a failure to have seen the supposed acknowledgment has been held to bar any attempt to toll the statute of limitations: "[t]he first problem the plaintiff faced in relying on the tax returns as an acknowledgment of the Promissory Note is that she admits that she never saw them." *Moore*, 714 F.Supp.2d at 411. Since the alleged acknowledgment also did not satisfy the requirement that the writing "must be communicated to the obligee to restart the limitations period." *Id.*, Keswin's claim must be dismissed.

### G. The May 2010 Copy of the 2009 Email Sent To Lyrical's Controller Is Insufficient.

The copy of the Email and unsigned spreadsheet sent by Finger Lakes to Desario, Lyrical's then assistant controller, in 2009 is just that – a copy with a copy sent to Desario (KeswinAff. ¶ 12) in order to bring him up to speed. Keswin testifies he never saw this email or the copy of the spreadsheet attached thereto and, of course, he admitted that he never saw the Spreadsheet in the first place.

On this basis alone, Keswin cannot invoke Section 17-101 and his claim should be dismissed as a matter of law.

**CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request the entry of an Order: (i) granting Defendant's Motion in its entirety; (ii) dismissing Plaintiff's complaint as time-barred pursuant to CPLR § 3211(a)(5); and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        February 14, 2017

                              Respectfully submitted,

                              DELBELLO DONNELLAN
                              WEINGARTEN WISE & WIEDERKEHR, LLP
                              *Attorneys for the Debtor/Defendant*
                              One N. Lexington Avenue
                              White Plains, New York 10601
                              (914) 681-0200


                              By:*/s/ Jonathan S. Pasternak*
                                  Jonathan S, Pasternak