DELBELLO DONNELLAN WEINGARTEN  
WISE & WIEDERKEHR, LLP  
*Attorneys for the Debtor/Defendant*  
One N. Lexington Avenue  
White Plains, New York 10601  
(914) 681-0200  
Jonathan S, Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
----------------------------------------------------------X  
In re:

                                                        Chapter 11  
FINGER LAKES CAPITAL PARTNERS, LLC,   Case No. 16-22112(RDD)

                                Debtor.  
----------------------------------------------------------X  
JEFFREY KESWIN,

                                                        Adv. Pro. No. 16-08212  
                     Plaintiff,              (Removed Proceeding)

      -against-

FINGER LAKES CAPITAL PARTNERS, LLC,  
V. ZUBIN MEHTA AND GREGORY SHALOV,

                                Defendants.  
----------------------------------------------------------X

**AFFIDAVIT OF V. ZUBIN MEHTA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COMPLAINT**

**STATE OF NEW YORK**        :  
                                    :  **ss.**  
**COUNTY OF WESTCHESTER**  :

      V. ZUBIN MEHTA, being duly sworn, deposes and says:

      1.      I am a Managing Member of Defendant Finger Lakes Capital Partners, LLC ("Finger Lakes").  I am also named individually as a Defendant in the above-captioned action.  I make this Affidavit, based upon my personal knowledge, in support of Finger Lakes' motion (the "Motion") for summary judgment dismissing the complaint (the "Complaint) filed by plaintiff

Jeffrey Keswin ("Keswin" or "Plaintiff").

## RELEVANT FACTS

### A. The Note

2. On August 1, 2006, Finger Lakes delivered to Keswin a Secured Promissory Note in the face amount of $1 million, bearing interest at twenty percent (20%) per annum (the "Note").

3. Although the face of the Note is for $1 million, Keswin never loaned Finger Lakes that amount.

4. The Note matured on August 1, 2007. No extensions were requested or granted, nor were any payments made on the Note subsequent to its maturity.

### B. The Emails and Spreadsheet

5. On October 20, 2009, I sent an email (the "October 2009 Email) to Ted Gage ("Gage") in his capacity as Chief Financial Officer of Lyrical Opportunity Partners, L.P. ("Lyrical"). A true copy of the October 2009 Email is attached to the Affidavit of Jeffrey Keswin dated June 24, 2015 ("Keswin Aff.") as Exhibit C.

6. Among other things, the October 2009 Email refers to an attached, but unsigned, spreadsheet setting forth, inter alia, my understanding of certain arrangements with Lyrical regarding certain investments made by Lyrical or its affiliates (the "Spreadsheet").

7. The Spreadsheet included, under the caption "Other," a reference to a $400,000 loan from Keswin to me and Shalov, personally (not to Finger Lakes); more specifically, that section of the Spreadsheet refers to "Jeff Keswin Loan to GS/ZM." This description does not match the loan made pursuant to the Note that Keswin seeks to enforce through this action, which was a loan *from Keswin to Finger Lakes*.

2

8.      The Spreadsheet also included, in footnote (e), a further statement that the "Loan to GS/ZM from Jeff Keswin is not included in the [Finger Lakes] Investment Portfolio Clawback and is due back to JK from GS and ZM out of their carried interest from [Finger Lakes'] Investment Portfolio."  In other words, footnote (e) indicates that the Keswin loan to me and Shalov was due back to Keswin from me and Shalov (*not* Finger Lakes) out of our "carried interest from [Finger Lakes] Investment Portfolio."  Again, this description does not match the loan made pursuant to the Note that Keswin seeks to enforce through this action, which was a loan *from Keswin* to Finger Lakes.

9.      Moreover, the language in footnote (e) is not an acknowledgement that there was a debt unconditionally due and owing, but, instead, reflects my understanding that the Loan would be repaid solely out of the carried interest in Finger Lakes Investment Portfolio, if any.

10.     In the private equity world, "carried interest" is a term of art which refers to the interest that the manager of an investment receives in the investment by an investor as compensation for locating and managing the investment.  At the time that the October 2009 Email and Spreadsheet were sent, Shalov and I were the Managing Partners of Finger Lakes, which itself was the managing member of various limited liability companies in which Lyrical had made investments and which constituted the "Finger Lakes Investment Portfolio."  Under provisions concerning the "Common Sharing Percentage" and "Distributions of Profits and Losses" in the relevant operating agreements, Finger Lakes had, at the time, carried interest in the limited liability companies of between fifteen percent (15%) and twenty-five percent (25%) of the investment proceeds after return of invested capital and a "preferred return" of six percent (6%). A copy of the operating agreement for one such limited liability company, Honeoye Lake Acquisition, LLC ("HLA"), is annexed hereto as **Exhibit A**.

3

11. Shalov and I, by contrast, do not *personally* have *any* carried interest in the Finger Lakes Investment Portfolio and never will and, as a result of the now affirmed decision of the Delaware, Finger Lakes, has no longer any carried interest either.

12. I did not request or instruct Gage to forward the October 2009 Email (or the Spreadsheet) to Keswin.

13. By email dated May 24, 2010 (the "May 2010 Email"), I forwarded a copy of the October 2009 Email (including the unsigned Spreadsheet) to Lyrical's former assistant controller Daniel DeSerio ("DeSerio") with a one-line message, stating "Dan – See the attached schedule which'll clear up the overall situation *for you (emphasis supplied")*.  A true copy of the May 2010 Email is attached to the Keswin Aff. as Exhibit D.

14. I sent the May 2010 Email to DeSerio at his request and in his capacity as assistant controller for Lyrical, solely in order to help bring him up to speed. I did not direct or request DeSerio to forward the May 2010 Email (or the Spreadsheet) to Keswin.

C. **The Delaware Action**

15. In June 2014, Finger Lakes commenced an action against Lyrical and HLA (one of the five investment vehicles managed by Finger Lakes) in the Court of Chancery of the State of Delaware (the "Delaware Action").

16. Lyrical, which is an entity which Keswin has managed since at least 2004 in his capacity as the sole managing member of both its general partner and the management company that oversees it, asserted counterclaims against Finger Lakes for, among other things, "amounts due under the Note." *See* Keswin Aff. ¶¶ 2, 16.

17. Thereafter, Lyrical sought and conducted pre-trial discovery regarding the Note (among other issues).  Lyrical then sought and conducted a two-day trial in the Delaware Action

4

before Vice Chancellor Laster of the Delaware Chancery Court, which took place on June 15 and 16, 2015.

18. In its Third Supplemental Objections and Responses to Keswin's Second Set of Interrogatories and Requests for the Production of Documents dated May 1, 2015 (the "Discovery Responses"), and through Gage's deposition testimony, Lyrical took the position that the Note that Keswin seeks to enforce in this action was part of a purported oral "Clawback" covering the entire [Finger Lakes] Investment Portfolio. But, if the Note was, in fact, part of the Clawback, then, as Keswin, Lyrical and Defendants had agreed, the Note would be deemed, ipso facto, converted from a Note to an automatic reduction of the carried interest by 25% (as Keswin, Lyrical and Defendants view the Clawback) or 100% (as the Delaware Chancery Court viewed the Clawback in its ruling) of the principal amount of the Note. A true copy of the Discovery Responses is attached hereto as **Exhibit B**, and true copies of the relevant excerpts from Gage's deposition transcript are attached collectively hereto as **Exhibit C.**

19. Keswin testified at trial in the Delaware Action that he never saw the Spreadsheet he now relies upon, but, remembers seeing a spreadsheet with no footnotes. True copies of the relevant excerpts of Keswin's trial transcript are attached collectively hereto as **Exhibit D.**

20. More specifically, Keswin testified:

> A. So what I was going to say is this e-mail, this schedule, is a copy of the previous one, except in this case, Finger Lakes – or I'll say Zubin – has inserted all of these footnotes that weren't extant in the first one.
>
> Q. Uh-huh. Right.
>
> A. So I know that I never saw these footnotes or reviewed these footnotes prior to this litigation.
>
> \*\*\*

5

  Q. Both you and --

  A. I did not -- I never saw these notes, and I never agreed to these notes.

*See* Exhibit D, pp. 102-103.

  21. In its Opening Pre-Trial Brief, Lyrical incorrectly argued that Finger Lakes owed *Lyrical* (not Keswin) the principal amount of the Note that Keswin seeks to enforce in this action and agreed (along with Keswin) to forgive interest under the Note. A true copy of the relevant portion of Lyrical's Opening Pre-Trial Brief dated May 15, 2015 is attached hereto as **Exhibit E.**

  22. More specifically, Lyrical noted that "Keswin will execute any reasonable documentation to confirm that payment to Lyrical will be deemed payment to him so that Finger Lakes and its guarantors will not face a double exposure" and that "[a]s with the Lyrical debt investments directly subject to the Clawback Agreement, no claim is made for the very substantial amount of unpaid interest in arrears, only the lost principal amount of the loan." *See* Exhibit E, pp. 64-65 n.14.

  23. Finally, in its Pre-Trial Reply Brief, and through Gage's trial testimony and demonstrative exhibit, Lyrical asserted that Finger Lakes owed Lyrical (not Keswin) not only the principal amount of the Note that Keswin seeks to enforce in this action, but also accrued interest. A true copy of the relevant portion of Lyrical's Pre-Trial Reply Brief dated June 8, 2015 is annexed hereto as **Exhibit F**, true copies of the relevant excerpts from Gage's trial testimony transcript are attached collectively hereto as **Exhibit G**, and the above-referenced demonstrative exhibit is attached hereto as **Exhibit H.**

  24. In the demonstrative exhibit, *Lyrical, not Keswin,* claimed a direct and complete right to payment under the Note, calling the alleged $1,106,666.62 "Liability of [Finger Lakes], Mehta and Shalov to Keswin (Loan Plus Interest)" a "[Finger Lakes] Liability to Lyrical."

6

25. Finger Lakes noted in a footnote in its own Pre-Trial Brief (prior to the submission of Lyrical's Pre-Trial Reply Brief and/or arguments at trial) that Keswin was not a party to the Delaware Action and that, in any event, enforcement of the Note was time-barred under Delaware law.

26. After trial, Lyrical attempted to unilaterally withdraw its claim on the Note in the Delaware Action without prejudice. A true copy of the relevant portion of Lyrical's Opening Post-Trial Brief dated July 2, 2015 is attached hereto as **Exhibit I.**

27. The Delaware Court ultimately declined to adjudicate the Note issue.

28. For the sake of clarity, neither this Affidavit nor any attachment hereto should be construed as an "acknowledgment or promise" by Finger Lakes, myself, or Shalov under New York General Obligations Law § 17-101. I am advised by my attorneys that any action on the Note by Keswin is time-barred under New York's statute of limitations.

I declare, under penalty of perjury, that the foregoing is true and correct.

*/s/ V. Zubin Mehta*
V. Zubin Mehta

Sworn and subscribed to
before me this 13th day
of February, 2017


/*s/ Jonathan S. Pasternak*
Notary Public